Our next case for argument is 22-1613 LBT IP v. Apple. Mr. Seale, please proceed. Good morning, Your Honors. May it please the Court. I'm going to be presenting the argument with regard to the 113, 256, and 618 patents, all of which involve the Sakamoto reference. My colleague, Mr. Gregory, here is going to present the argument with regard to the 774 and 619 patents. We appreciate your accommodation in letting Mr. Gregory present some argument today. The Board's conclusion with regard to the 113, 256, and 618 patents was erroneous because there is no evidence to support the conclusion that the Sakamoto reference discloses a transition from a stop position mode to normal sensitivity position mode in response to a signal level. The Board relied on three evidentiary underpinnings to make that determination. The first is paragraph 27 of Sakamoto, which discloses a transition, but Mr. Andrews, an expert for Apple, acknowledged that paragraph 27 of Sakamoto does not disclose a transition from stop position mode into another mode. So that takes care of paragraph 27. The other part of Sakamoto on which the Board relied is the time cycle disclosed in paragraphs 37 and 38 of Sakamoto. You can look at paragraphs 37 and 38 of Sakamoto for yourself and see that it does not disclose a transition out of stop position mode into normal sensitivity position mode as the Board determined. What it does instead is disclose a transition between normal sensitivity position mode and high sensitivity position mode, or if the signal is too weak to be useful, it goes into stop position mode, at which point the power to the GPS receiver is cut off completely. So there is nothing in paragraph 37 or 38 to support the Board's decision either. Well, you say there's nothing in those paragraphs to support the decision. I mean, look, I'm not a skilled artisan, so while maybe I look at that and I say, oh my gosh, it doesn't say stop position in there. Those words don't appear. But Mr. Andrews was an expert, and he offered testimony that a skilled artisan would understand those paragraphs as disclosing exactly that. That's what the Board relied on. I think I have to give that substantial evidence deference, don't I? You do, Your Honor, but you have to look at the basis for Mr. Andrews' opinion. He acknowledged that paragraphs 37 and 38 did not expressly disclose the transition, but his reasoning for the disclosure was that one of ordinary skilled art would understand the transition would necessarily have to be present, otherwise the Sakamoto device would enter into stop position mode and never come out, rendering it useless. And that's incorrect. Sakamoto discloses a manual reactivation of the GPS receiver. Well, when you say it's incorrect, counsel, that's not actually helpful because, again, I'm not a skilled artisan, and I have to give substantial evidence deference. And with all due respect, I have no idea whether you're a skilled artisan, but you're certainly not qualified as one in this case. So you telling me that his view of what this discloses is incorrect is not going to be persuasive point me to the evidence that shows why Mr. Andrews' view is not supported by substantial evidence. It's not just incorrect because I don't review this de novo, right? So your opinion doesn't matter, and it doesn't matter that it's, air quotes, incorrect because I don't review it de novo. So you have to show me where there is really conclusive evidence that demonstrates that it's wrong. Understood, Your Honor. And by incorrect, what I mean is you can look at the Sakamoto reference and see that it provides a manual reactivation of the GPS receiver. Counsel, so you said necessarily have to be present, so you're talking about inherency, right? I don't think Mr. Andrews made the inherency argument. It was his impression that one of ordinary skill in the art would read it that way, and I think it is a sort of quasi-inherency argument. What else can you rely on to show that a reference teaches something that it doesn't express or disclose other than inherency? And inherency is necessarily have to be present. Those were the words that you just used. So what's the evidence for why it necessarily doesn't have to be present? And can you point to the appendix and column line numbers to show us that? Yes, Your Honor. So first, Sakamoto discloses two different methods of coming out of stop-position mode, one of which is the time cycle, which is expressly disclosed in Paragraph 37 and 38 of Sakamoto, and the other is manual reactivation, and I believe that's in Paragraph 28 of Sakamoto, but I won't confirm that for you. So the point that Mr. Andrews is making is that— That would be very helpful. Give us the JA number. I think it's 1324, the small appendix, the smaller one. We don't want the big one. I should have this. I know it's a breeze. Sakamoto discloses manual activation in response to a user's input. Actually, Your Honor, I've used more of my time than I'd like to reserve for Mr. Gregory, so if I can answer this question in the rebuttal period, would that be okay? I can look it up then and get to you. Sure. May it please the Court, Sean Gregory. I want to discuss first the 714 patent. The Board clearly erred in construing multitude to include two or to be the same as two or more. If we look at the Board's analysis, they first identified Figure 4 as a non-limiting embodiment of the invention, and then, as it relates to intrinsic evidence, simply said they did not agree that thresholds plural means threshold plural. Let's start. Figure 4 is 5 to 7, right? Figure 4 has 5 to 7 ticks on it, yes. Okay, so Figure 4 is 5 to 7. You used the word multitude, so we know that multitude has at least a floor at 5 to 7. Whether it goes down to 2 is something we have to figure out, but we know it has to include at least 5 because Figure 4 itself includes 5 to 7, right? So multitude, we know whatever multitude means, and Lord knows I've spent a lot of time thinking about this the last couple days, we know it at least goes as few as 5. So that's what the patent supports. Then the question is, does multitude go as low as 2? One of the things that disappointed me tremendously is the board relied on dictionary definitions in this case expressly, and I have to give substantial evidence to that. Do you know that you all didn't discuss them or include them in the appendix at all? Did you know you didn't give us any of those dictionary definitions? No, Your Honor, I did not realize that. Wouldn't that be helpful if the board is saying that two definitions, i.e. multitude and plurality, are almost identical in my cousin Vinnie's sort of way? If the board is reaching that conclusion, wouldn't it be useful for you to show me those two definitions and show to me how they're not, in fact, identical? Yes, Your Honor. Yeah, but you didn't. Lucky for you, I did that. Anyway, I got the definitions. They look nothing alike. So I'm not sure how plurality and multitude, how I could ever sustain a fact finding that these definitions, the actual ones presented to the board, showed that plurality and multitude were the same. So so far, despite me giving you a hard time about not including the definitions, these are friendly questions. Yes, Your Honor, thank you. Okay, but here's my problem. My problem is I don't see how multitude is three. So while I agree with you that your patent discloses a multitude which has to go as low as potentially five, probably doesn't include two, but why in the world do you say it includes three? Your Honor, patent owner's position is not that multitude necessarily includes three. Instead, it is that multitude excludes two. It is not the same as plurality. It is not the same as two or more, but it is some number larger than two. And includes five to seven because that's what the patent discloses as its main embodiment in Figure 4. Yes, Your Honor. So like I – but I'm trying to wrap my brain about the idea of claim construction, and it's a question of law, and it's my job to say what the claims mean, and all these definitions talk about multitude meaning many. It's an ambiguous term except that your patent has actually given an example of what a multitude is, which is at least five. Yes, Your Honor. So I guess would you be happy if I said multitude wasn't two? It's got to have at least five, but what if I just left the question open of whether it's three or four because I don't know whether it's three or four. Absolutely, Your Honor. That is exactly what we're asking for. We're comfortable with that. The point is that multitude necessarily does not include two. It is some number larger than that. Do we have to understand the word multitude in the context of the spec? I mean, I agree. I don't find the dictionary definitions all that helpful because it just says a large number, but I think you always got to consider the context. For example, if I had eight piercings in my ear and had eight earrings, someone could say I have a multitude of piercings, right? Yes, Your Honor. Clearly, but in the context of this, don't we have to look at multitude in that context? Absolutely, and what's significant, Your Honor, in that context, what this invention is directed to is being able to, on a sliding scale, alter the amount of battery level versus the frequency of updates over time. I understand that. Do you agree that the figure four has five to seven values, shown as the board found? At least, yes, Your Honor. Okay. So what's significant is the prior art only discloses two thresholds, and the reason multitude and the construction of multitude is significant is if it includes two, the prior art reads on it. Here's one problem I have, though. One problem I have is if I remember right, and you guys didn't brief this, Apple argued below in their reply that Sakamoto may be read as disclosing as many as four, and the board didn't address that. So you and I just talked about me saying multitude doesn't include two, but I told you I don't know what to do with three or four. They argued Sakamoto discloses four, so then is the answer here I vacate and remand for the board to consider that argument that Apple made? Your Honor, Apple's argument was not that it included four. It was that it included two of one type and two of another type, which adds up to four. Two thresholds of one type, two thresholds of another type. See, what you're saying now was not argued or briefed to us, and I'm very tentative about wanting me to try to figure out what their argument below was. So is your argument, though, that if I say multitude isn't two, I vacate and remand to the board, is there still something left to be decided based on something the board maybe didn't decide, No, Your Honor, because the board explicitly identified the two thresholds as being the indication in the prior article that met the limitation. So in their decision, they rested their obviousness conclusion. But did they even address the alternative argument made by Apple that there was four thresholds disclosed in Sakamoto? It doesn't look like they did, but if you think they did, please tell us where that was addressed. Your Honor, I don't know right now. I'd have to use rebuttal time to look at that. OK, well, you're out of all your time, so sit down. I will give you some rebuttal time, but let's hear from opposing counsel. Mr. Seitz, do you mind starting with the multitude since that's where we left off? Of course, Your Honor, and may it please the court, I am Adam Seitz on behalf of the appellee Apple. So let's start with multitude. I heard some questions about the disclosure in the intrinsic record for where it goes from figure four. We have figure four that tells us that there's five to seven. The board and the parties, Apple included, focused on column 11. Column 11 was the focus of a significant amount of discussion between the parties, the focus of our briefing here, and that's where I want to take you. So column 11, that's at appendix 368 of the 774 patent, and I'm specifically referring to approximately line 62. So the problem I have with the argument you're about to make, and I'm just going to fast forward you because I know what the argument is, I've read the brief. The argument you're about to make is it gives two alternatives that you would exercise as a tradeoff between them, right? Correct. And so that's why you want it to be two. The problem I have is that while it does discuss those two alternatives there, all of column 11 is a discussion of figure four. It specifically is pointing you to numbers that are numbers in figure four. The top of column 11 specifically says referring to figure four, and figure four shows five to seven. So while that one sentence, perhaps ambiguous, maybe if figure four itself didn't show five to seven tick marks, maybe that one sentence in isolation, or if it wasn't attached to figure four, could have articulated two thresholds. But my problem is that sentence is part of the discussion of figure four, and figure four clearly and undeniably shows five to seven thresholds. I don't see how that ambiguous sentence could possibly be read to support the idea that multitude means two. So in response to that, there's two points here. First, yes, it is discussing figure four, which has five to seven, but it is – I don't believe it's vague. I believe it's describing that there's optimal battery life, one end of the threshold, or optimal update, which is the other end of the threshold. It specifically refers to tradeoffs between them in line 63, which is the board found are the tradeoffs between those two points. And it also talks in the same thing about the slider, and the slider could move along that figure four hash mark, and there are seven different little hashes, or five different little hashes. So I don't see how that could possibly be construed as limiting the claims suddenly to two thresholds. I'm not suggesting that the claim should be limited to two. We're saying that it is two or more because I would agree with you, Your Honor, that there are a number of hash marks depicted in figure four. Well, the problem you have is the word multitude doesn't include two in its plain and ordinary meaning. And so you have to get past that to show that the patent somehow gave an embodiment or an example or something that changed the plain and ordinary meaning of the word multitude. Yes, and I think in that regard you can look at the combination of column 13 and also claim 12. Claim 12 reads it's relating to a timing schedule, the setup of a timing schedule, and it reads that you have a local apparatus to set up a timing schedule from a multitude of wireless communication networks. The discussion for that claim, the support for that claim comes out of column 13 in line 35 to 40. And there, in discussing the setting up of the timing schedule, it reads between one or more than one wireless communication network. So here we have an instance of the claim itself, claim 12, not a challenged claim here, but claim 12, using the phrase multitude of wireless communication networks. The support that we have in the specification for that tells us that it's going to be one or more than one. We know multitude can't be one, but what this tells us is that the drafter here was intending for multitude to be more than one, which takes us back to the board's construction, two or more. So I believe when you look at column 13 in connection with the tradeoffs between at least the two— Where in your brief did you mention claim 12 in this argument? Because I just texted my clerk and said, God, I don't remember this argument. That was not addressed in the briefing, Your Honor. So you're making an entirely new argument now at the podium. I'm raising that in response to the reply brief, which discussed claims 2 and 16 as additional support for multitude, where Pat and Hunter discussed claims 2 and claim 16 as providing additional support relating to why multitude should be some number of three or more. The board made what appears to be a fact finding that the dictionary definitions of multitude and plurality were identical. I don't see that. I've got those dictionary definitions in front of me. Plural is the state of being plural. It's certainly—I guess if I think in terms of a Venn diagram, plural could be two or more. But when I look at—and so therefore plural could include a multitude, right? Because say a multitude is five to seven. Plural, five to seven is plural. But I'm not sure two is a multitude. Do you understand where I'm going with this? They are not completely concentric circles that overlap. They each have their own definition. Plurality could include a multitude, but I don't see how a multitude necessarily can be as few as two. All of the definitions that were given says a very great number. As much as I love my husband and two of us are not a very great number. So in response to that, Your Honor, I did not— I can respond to that. Avoiding the question. Tell me how great my husband and I are. I mean, there you go. I did not rely on the dictionary briefings in our arguments. I don't view them as providing much guidance for us here. It's probably really smart for you not to rely on them because they're not very helpful. When I look at Column 11, I see at least those two endpoints. I see more than two endpoints. When I look at Column 13, I see more than one. I understand what you see, but let's say that ultimately I'm not going to agree with you on multitude. Because if you haven't figured it out, that's where I am. So now just tell me, though, what happens. Do I vacate and remand? Because I did notice that Apple made an argument that Sakamoto— Correct, Sakamoto. Sakamoto discloses four thresholds. I don't feel like I'm equipped to try to figure that out in the first instance here on appeal. It doesn't seem flushed out in the briefing. Is there still an open question, depending upon how I define multitude, even if I construe it in a way you don't love, is there still an open question? I believe there is. I believe there's a question. Our experts—I don't have the citation off the top of my head because it wasn't briefed here. You're right, the Board did not address it in their underlying written decision. But there is a question. We provided testimony, argument, and then the expert discussed how you have these thresholds that vary between normal, high-sensitivity, stop mode, the two and the two that counsel was discussing up here. So I do believe it would be appropriate to remand for further fact-finding by the Board and analysis by the Board on that. Because the Board didn't address that argument. No, they didn't. Do you want to turn to the other issue? Yes, Your Honor. Let me turn to the batch of three patents, 113, 618, and 256, which relate to, again, Sakamoto. And here we have the question of—specifically the question, the only question that has been addressed by the Board is what happens or that has been addressed by counsel is what happens with Sakamoto when it's what the parties have referred to as the stop position. Can I ask you, just before you get into it, are you relying on or was your expert relying on inherency? I mean, I'm wondering how you fill the gap in for what a prior reference teaches. And we've got cases that say you can't rely on common sense to fill in a gap. And so I'm thinking you must be relying on inherency. So two answers to that. He looks at paragraph 27. 27 tells us there's an automatic moving between high-sensitivity mode and normal-sensitivity mode, that based on your signal levels, the system of Sakamoto is going to automatically jump between those two. 27 admittedly does not discuss the stop position though. 37 does, and 37 describes explicitly that you will have a cycle set in advance, it's a timing cycle, and each time that cycle comes around, you are going to then go and get your signal level from your satellites. 38 tells us then based on what you've obtained, the readings from the satellites, I will then choose or Sakamoto will then choose a mode to go into. In other words, it will re-sense the signal and then make a determination based on that. That's right. And so our expert then took those disclosures from Sakamoto, 27, 37, and 38, and said as I read these, this tells me that you would not simply just stay in stop mode, that it would be rendered essentially useless as a device if I stayed in stop mode and never came back out of it, but the disclosure of 37 tells us that there is a cycle that's set in advance. That cycle is a timing cycle. So in other words, that reliance on common sense that it can't just stay deactivated isn't necessarily standing on its own to fill in the argument, but instead it's supporting the reading of the reference. That's right. Okay. And the board analyzed those very same paragraphs. The board came to that conclusion. The board then also credited our expert's testimony on that. He is the only expert that provided any testimony in this case, the only expert that was even part of this proceeding, and the board actually, if we look at the appendix of 239, the board noted that it accorded significant weight to Mr. Andrews' understanding of Sakamoto's teachings. The board went on at the appendix of 239 and 242 to say that it credited his rationale because they found it consistent with their reading of Sakamoto's disclosure as well. And so what we're left with is the board looked at the explicit disclosures of Sakamoto, described them in the manner that I've described here. They compared that to the descriptions of Sakamoto as understood by one of ordinary skill in the art. They credited that testimony, and then they looked at the record and found the arguments proffered by LBT were not in the attorney argument, properly weighed and rejected those in comparison to the testimony that was in the record. And that's how they arrived at that conclusion. I know. I find this to be a hard issue. So because neither paragraph 37 nor 38 cleanly disclose what you need them to disclose, so you need the expert testimony, but like Judge Stoll, I've been struggling with, is it that they inherently disclose it, that a skilled artisan would know it has to do this based on what is in fact disclosed about what happens? I'm trying to understand the legal rationale because as Judge Stoll said when she started her questioning, it can't just be that common sense would tell you that this would happen because that's not enough. So is it inherently disclosed? Because what sentence here in either paragraph 37 or 38 is Mr. Avery saying, see, that sentence teaches this. See, he doesn't do that. He's more a matter of saying, well, to have an operable invention, one would know it must do this. And that feels like inherency to me, but you're shying away from the word, and so I'm trying to figure out why. How do I understand this? No specific reason. The Board did not make a specific finding saying it was or was not inherent. It's not inherency because in his deposition testimony, your expert said it could be, could be, could be several times. So that makes inherency kind of hard for you. But, again, where is this sentence? I think that Chief Judge Moore's question was a good one. Paragraphs 37 and 38, where do you have us look to know exactly how it supports what your expert said this reference teaches? The focus by the Board and by our expert rested on the first sentence in paragraph 37, at the cycle set in advance. That is the lynchpin. And is that supposed to tell me it's in the stop position? Or what is that at the cycle set in advance? So 37, the cycle set in advance, tells us that Sakamoto's system is going to go and obtain the signal strength from the satellites in a repeated manner, a cycle set in advance. So in the Sakamoto system, you will set a time period, whatever that time period may be, to cycle, have your system cycle through and obtain the signal strength of the satellites. And so the system then will turn on at that set time, for lack of better phraseology, to take a reading from the satellites to determine what their strength is. So when we ask, where is the phraseology? It is the cycle set in advance that tells the Board from the express disclosure of Sakamoto and then tells our expert that a cycle means it's going to repeat. 38 tells us that based on the readings you get from 37, you are going to jump in or out of various modes. If there's no more questions there, I would like to briefly address the 619. What's the 619? The 619 relates to Miranda Knappen. Is this the motivation to combine things? Yes. See, why would you do that? Why would you address that? They didn't address it, and so if they didn't address it and you address it, you open the door of rebuttal for them to address it. If they didn't address it and you don't address it, they stand up for rebuttal, and I don't let them touch it because it wouldn't be fair to you. So if you really – you must think your motivation to combine cases is weak. That's why you want to raise a sua sponte. So go ahead. Raise it. I have nothing further to say. All right. I'll restore each of your respective rebuttal times so you each get your two minutes of rebuttal. Thank you, Your Honor. Judge Stahl, with regard to your question about the express disclosure and second mode of manual reactivation, I'll point you to Appendix Page 1321, Paragraph 20. That was really quick. I know you only have two minutes, but what did you just say? There's something? Appendix Page 1321 at Paragraph 20 discloses manual reactivation of the GPS receiver by pressing a button. Do you agree with the characterization of Paragraph 37 as teaching, you know, that periodically there's this timing, there's a cycle set in advance that causes this repeated detection of the signal level? It's describing the normal sensitivity positioning mode, Your Honor. Yes, we agree that there is a cycle that – in normal positioning, the GPS receiver, according to second mode, turns off and on, checks the signal. If the signal is strong, it turns back off because it's not needed. So, yes, the issue we have with that disclosure is that that's not transitioning out of stop position mode because you can't get the signal without the GPS receiver first turning on, and once the GPS receiver is on, according to how the petition describes stop position mode, you're no longer in stop position mode. I'm certainly no expert, but I understood the Paragraph 20 disclosure to be an entirely different embodiment than Sakamoto's in Paragraph 37-38. It is a different embodiment, but if you look at Paragraph 30, which is on page 1323, it states that the positioning system of Embodiment 2, which it refers to as the present embodiment in that paragraph, they're the same as those in Figures 1 and 2 as described in Embodiment 1. So the positioning system, although they're different embodiments, operates in the same way. And finally, with regard to the point about inherency versus common sense, really what Mr. Andrews has done is a common sense approach. If you look at his deposition testimony, if you look at what he's put in his report, it's that one of ordinary skill in the art would expect there to be an activation out of stop position mode because otherwise it'd be useless. And as referenced in Sakamoto in Paragraph 20, that's not true because there's another way to get out of stop position mode. Thank you, Your Honor. Thank you, counsel. Mr. Gregory? Your Honor, just really quick, Judge Stoll. There is no—the board did not address the 2 and 2, the alternative scenario. So they only addressed the two-threshold situation. And they determined, though, because if multitude has two, that's why Sakamoto would teach it. So we would, as a result, if we agree that the claim construction was incorrect, holding that multitude is two, then we have to remand for the board to consider that issue. Yes, Your Honor. And that's all I have. I think all counsel is taken under submission.